**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>JAMES RICHARD JORGENSEN<br>and LAURA MAE JORGENSEN,<br><br><br>       Debtors. | Case No. 18-14586-A-13 |
| DONALD G. ALUISI<br>and KAREN ALUISI,<br><br>       Plaintiffs,<br><br>   V.<br><br>JAMES RICHARD JORGENSEN,<br><br>       Defendant. | Adv. No. 19-01026-A<br><br>**MEMORANDUM**<br><br>NEA-3 |

Argued and submitted on November 12, 2019

at Fresno, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances: Kurt F. Vote, Wanger Jones Helsley PC for plaintiffs Donald G. Aluisi and Karen Aluisi; Nicholas E. Aniotzbehere, Yarra Law Group for defendant James Richard Jorgensen

Malpractice becomes fraud when an accountant knowingly conceals his own error. Former clients sued their accountant for two counts of fraud. Count I alleges that the accountant understated the clients' tax basis on their state income tax returns. It also hints discovery from his reduction of the correct federal income tax basis to the incorrect state income tax basis on subsequent tax returns. Count II alleges the accountant gave faulty § 1031 Exchange advice and suggests knowledge from his involvement in 20-40 § 1031 Exchanges over a 50-year career. Have his former clients pled facts showing the accountant's actual knowledge as to each error?

**I. FACTS**

Defendant James Richard Jorgensen ("Jorgensen") has been a Certified Public Accountant for 50 years. Starting in the late 1980s and continuing until 2015, Jorgensen rendered services to Donald G. Aluisi and Karen Aluisi ("Aluisis"), who were farmers, businesspersons, and commercial landholders. Jorgensen prepared the Aluisis' returns and advised them on financial matters. Among the matters on which the Aluisis consulted Jorgensen were tax-deferred transactions. At issue are two instances of excess tax liability resulting from Jorgensen's services to the Aluisis.

**A. The Trading Post Depreciation**

In 2000, Aluisis purchased "The Trading Post," a commercial property, from Donald G. Aluisi's father in a tax-deferred exchange. Jorgensen represented both the elder Aluisi and the plaintiff Aluisis in that transaction.

When Jorgensen prepared the plaintiff Aluisis' 2000 federal and state income tax returns, he made an error on the state income tax return. As the Aluisis stated the problem:

2

> In early 2001, [Jorgensen] prepared [Aluisis'] 2000 tax returns, which included the 1031 Exchange for The Trading Post. What occurred next was not discovered until many years later – 2017 – by [Aluisis'] new Certified Public Accountant. **In the 2000 tax returns both Federal and State bases were correct and consistent (the amount of $3,695,335) on the disclosure page, however on the depreciation page, the State tax basis, which should have remained consistent with the Federal tax basis[,] was lowered to $2,833,335, a difference of $862,000.** [Jorgensen] listed the tax basis for federal purposes on the 2000 return at $3,695,335 and California state tax basis at $2,833,335, with no explanation for the difference. This is a significant and obvious inaccuracy.

Second Amended Complaint ¶ 16, September 4, 2019, ECF # 56 (emphasis added).

For each following tax year until 2015, Jorgensen replicated the error, understating the Aluisis' depreciation expenses on their state income tax returns, and thereby creating an unnecessary tax liability for Aluisis.

In October 2015, while preparing the Aluisis' 2014 income tax returns, Jorgensen discovered his error. In the pertinent part, the Aluisis have pled:

> It is clear that **[Jorgensen] caught his error of the incorrect State tax basis during preparation of [Aluisis'] 2014 tax returns[,] which were filed on extension on October 15, 2015, because [Jorgensen] deliberately changed the correct Federal Tax basis in the amount of $3,695,635 to match the lower incorrect California tax basis in the amount of $2,833,335. . . . Further, by [Jorgensen] lowering the correct Federal tax basis of The Trading Post transaction to the incorrect California income tax basis**, [Jorgensen] knew that this would result in less scrutiny than raising the incorrect California basis to the correct Federal basis without any explanation or acquisition that would support the higher basis. . .

Second Amended Complaint at ¶ 17(G).

Jorgensen did not disclose his error to Aluisis. For their income tax returns for 2014 and for each subsequent year, Jorgensen

3

lowered the tax basis claimed on the federal income tax return to $2,833,335 to match the lower, and erroneous, tax basis claimed on the state income tax return.

Dissatisfied with Jorgensen's services, the Aluisis terminated their relationship with him and hired Christopher Morse ("Morse"), a Certified Public Accountant. In 2017, Morse advised Aluisis of Jorgensen's understatement of the tax basis claimed on their state income tax returns. When Morse asked Jorgensen to explain the discrepancy, Jorgensen gave differing and false explanations:

> When [Aluisis'] successor tax preparer met with [Jorgensen] to obtain information concerning the inconsistency between the California state and federal bases for The Trading Post, **[Jorgensen] produced no tax work papers and claimed to have no knowledge of why or explanation for the tax basis discrepancy**. . . **Subsequently, [Jorgensen] testified that a fire destroyed the records and work papers involving the preparation of the 2000 tax return that reported the 1031 Exchange for the acquisition of The Trading Post.** [Jorgensen] claimed that he needed these records to determine why the state income tax basis was substantially lower that the federal tax basis. To "cover up" his errors, **[Jorgensen] stated the records were destroyed in the fire. This was an intentional misstatement** . . .

Second Amended Complaint at ¶ 12 (emphasis added).

With Morse's assistance the Aluisis were able to amend their returns as far back as the 2013 tax year. Applicable tax law precluded amendments beyond that date.

Aluisis allege the following damages as a result of Jorgensen's conduct: lost depreciation of $45,000 between the years 2000 and 2013; accounting fees paid to Jorgensen of $48,000; and additional accounting fees paid to Morse of $6,325.

**B. Section 1031 Exchange of The Trading Post**

In 2013, the Aluisis commenced negotiations with a buyer to sell

The Trading Post and in 2014 the Aluisis entered into a contract to sell The Trading post using a "§ 1031 Exchange."[1] A § 1031 Exchange is a tax strategy, sanctioned by the Internal Revenue Code, that allows deferral of gains on the sale of investment property provided a like-kind property is purchased with the gain from the sale of the first property. Section 1031 Exchanges are subject to stringent requirements. Sellers may not receive cash distributions, known as "cash boot," or reduce the amount of secured debt from the first to the second property, known as "mortgage boot." A seller's failure to comply fully with Internal Revenue Service regulations governing § 1031 Exchanges forfeits deferral of the tax on the gain.

Throughout the process the Aluisis consulted with Jorgensen and discussed with him their goal of emerging from the § 1031 Exchange with different investment properties that were unencumbered. The Aluisis' plan was to sell The Trading Post for $11,500,000, retire secured debt against The Trading Post of $5,500,000, retain $1,000,000 cash and purchase other properties with the remaining $5,000,000. The Aluisis were aware that retaining $1,000,000 was taxable as cash boot; they were unaware that the reduction in secured debt, i.e., payoff of the $5,500,000, would also be taxable as mortgage boot. Jorgensen told them that their plan was "sound," "solid," and "valid." Jorgensen did not warn them about the mortgage boot problem.

Unaware that proceeding with the sale would create a substantial tax on the mortgage boot, the Aluisis proceeded with the sale of The Trading Post and reinvestment of sale proceeds. As a result, the Aluisis owed an additional, and unexpected, $2,300,000 in taxes.

Aluisis contend that Jorgensen knew that their plan to step down

---

[1] 26 U.S.C. § 1031

5

the amount of their secured debt would defeat the goal of tax deferral and would generate a tax for the year in which the sale occurred. They allege that Jorgensen was an experienced accountant who had "handled" § 1031 Exchanges previously:

> As a Certified Public Accountant, **[Jorgensen] was knowledgeable with the requirements of 1031s and any rule changes to the 1031 process through his continuing education (80 hours every 2 years)**. In fact, [Jorgensen] had handled the original 1031 Exchange leading to the acquisition of The Trading Post in 2000. Further, [Jorgensen], in sworn testimony in the State Court case testified that he was an **experienced CPA with direct knowledge of 1031 Exchanges from having handled between 20 to 40 . . .**

Second Amended Complaint ¶ 27 (emphasis added).

Aluisis also allege that he knew a tax would result:

> [Jorgensen] advised [Aluisis] that their plan was a sound plan and gave them no warning about the "mortgage boot" issue. **As a Certified Public Accountant with substantial 1031 Exchange experience, [Jorgensen] knew that a substantial tax liability would flow from their strategy** and that harm would occur and that [Aluisis] would be deceived to their detriment by [Jorgensen's] false statements . . .
>
> As hereinbefore alleged, [Jorgensen] made misrepresentations and fraudulent omissions in connection with his advice to [Aluisis] regarding their plan concerning the 1031 Exchange of The Trading Post by telling [Aluisis] their plan regarding the 1031 Exchange was a valid plan. **[Jorgensen] knew of the falsity and deceptiveness of his advice at the time it occurred; [Jorgensen] knew of that [Aluisis] would incur tax penalties if they proceeded with the plan they had explained to him** . . .

Second Amended Complaint at ¶¶ 33, 36 (emphasis added).

In 2017, Aluisis brought a professional negligence action against Jorgenson in state court.

**II.　PROCEDURE**

In 2018, before the state court action could be resolved, Jorgenson and his spouse, Laura, sought the protections of a chapter

13 bankruptcy.

The Aluisis brought an adversary proceeding against Jorgensen to except his debt to them from the discharge.  11 U.S.C. §§ 523(a)(2)(A), 1328(a).  They contend that Jorgenson was aware of his professional negligence, e.g., underreporting their tax-basis and giving incorrect advice with respect to a tax-deferred real estate transaction and concealing those mistakes from them.

On two prior occasions, Jorgensen challenged the sufficiency of the Aluisis' complaint by motion to dismiss.  On each occasion this court has granted Jorgensen's motion to dismiss, giving Aluisis leave to amend their complaint.

Aluisis filed a Second Amended Complaint alleging two counts of non-dischargeable fraud under § 523(a)(2)(A), i.e., lost depreciation between 2000-2015 and unnecessary tax liabilities arising from the mortgage boot for the sale of The Trading Post.  Jorgensen has moved to dismiss the Second Amended Complaint, arguing that the Aluisis have not pled facts from which the court may find anything beyond professional negligence.  Aluisis oppose the motion.

**III. JURISDICTION**

This court has jurisdiction.  28 U.S.C. § 1334(a)-(b); *see also* General Order No. 182 of the Eastern District of California.  This is a core proceeding.  28 U.S.C. § 157(b)(2)(I).  The plaintiffs have consented to final orders and judgments by this court.  Second Amended Complaint at ¶ 4.

**IV. LAW**

    **A.  Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief

7

can be granted." Fed. R. Civ. P. 12(b)(6), *incorporated by* Fed. R. Bankr. P. 7012(b). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008); *accord Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

After *Iqbal* and *Twombly*, courts employ a three-step analysis in deciding Rule 12(b)(6) motions. At the outset, the court takes notice of the elements of the claim to be stated. *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Next, the court discards conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *United States ex rel. Harper v. Muskingum Watershed Conservancy District*, 842 F.3d 430, 438 (6th Cir. 2016) (the complaint failed to include "facts that show how" the defendant would have known alleged facts). Finally, assuming the truth of the remaining well-pleaded facts, and drawing all reasonable inferences therefrom, the court determines whether the allegations in the complaint "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Sanchez v. United States Dept. of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). *See generally*, *Wagstaff Practice Guide: Federal Civil Procedure Before Trial*, Attacking the Pleadings, Motions to Dismiss § 23.75-23.77 (Matthew Bender & Company, Inc. 2019).

Plausibility means that the plaintiff's entitlement to relief is more than possible. *Twombly*, 550 U.S. at 570 (the facts plead "must

cross the line from conceivable to plausible"); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11 Cir. 2017). Allegations that are "merely consistent" with liability are insufficient. *Iqbal*, 556 U.S. at 662; *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

If the facts give rise to two competing inferences, one of which supports liability and the other of which does not, the plaintiff will be deemed to have stated a plausible claim within the meaning of *Iqbal* and *Twombly*. *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *16630 Southfield Ltd. P'hsip v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013); *see also*, *Wagstaff*, Motion to Dismiss at § 23.95. But if one of the competing inferences is sufficiently strong as to constitute an "obvious alternative explanation," that inference defeats a finding of plausibility and the complaint should be dismissed. *Marcus & Millichap Co.*, 751 F.3d at 996 ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that the plaintiff's explanation is implausible."); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109, 121 (2nd Cir. 2013).

Since this is a claim alleging fraud, Rule 9(b) also applies. *See, e.g.*, *Chase Bank, U.S.A., N.A. v. Vanarthos (In re Vanarthos)*, 445 B.R. 257, 264 (Bankr. S.D.N.Y. 2011). This rule's heightened pleading standard requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b), *incorporated by* Fed. R. Bankr. P. 7009. This standard means that "the complaint must set forth what is false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp Ltd.*, 551

F.3d 1156, 1161 (9th Cir. 2009) (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999)) (internal quotation marks omitted). The facts constituting fraud must be pled specifically enough to give a defendant sufficient "notice of the particular misconduct" so that defendant may defend against the charge. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003). A plaintiff must include the "who, what, when, where, and how" of the fraud. *Id.*

**B.　　11 U.S.C. § 523(a)(2)(A)**

Section 523 excepts debts incurred by fraud from discharge. 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under § 523(a)(2)(A) the creditor must plead and, by a preponderance of the evidence, prove:

> (1) misrepresentation(s), fraudulent omission(s), or deceptive conduct; (2) knowledge of the falsity or deceptiveness of such representation(s), omission(s), or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor; and (5) damage to the creditor proximately caused by its reliance.

*In re Shannon*, 553 B.R. 380, 388 (9th Cir. BAP 2016), citing *Ghomeshi v. Sabban (In re Sabban),* 600 F.3d 1219, 1222 (9th Cir.2010).

An omission may give rise to an exception to discharge under § 523(a)(2)(A) if the debtor was under a duty to make disclosure. *Tallant v Kaufman (In re Tallant)*, 218 B.R. 58, 64-65 (9th Cir. BAP 1998) (attorney). The Ninth Circuit has adopted the test articulated by the Restatement (Second) of Torts (1976) for deciding whether a defendant has a duty to make disclosure. *Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1323-24 (9th Cir. 1996). The Restatement provides:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that

10

   he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

   (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> **(a) matters known to him that the other is entitled to know because of a fiduciary** or other similar relation of trust and confidence **between them;** and
> . . .
> **(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so** . . .

Rest.2d Torts at § 551(1),(2)(a),(b); *Cf.*, Treasury Department Circular No. 230, § 10.21 (requiring an accountant to advise client of the existence of an error on prior year's return).

  At issue is whether the Second Amended Complaint pleads facts from which Jorgensen's knowledge under § 523(a)(2)(A) may plausibly be inferred.[2]

**V. DISCUSSION**

  "Knowledge" of the falsity of the representation requires "actual knowledge of the falsity of a statement" or "reckless indifference" to the truth. *Morimura, Ari & Co. v. Taback*, 279 U.S. 24, 33 (1929); *Anastas v. Am. Savings Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir. 1996); *Advanta Nat. Bank v. Kong (In re Kong)*, 239 B.R. 815, 826-67 (9th Cir. BAP 1999). Reckless conduct requires something beyond "simple or inexcusable negligence." *Hirth v. Donovan (In re Hirth)*,

---

[2] Affidavits and declarations may not be attached as exhibits to the complaint. Fed. R. Civ. P. 10(c), *incorporated by* Fed. R. Bankr. P. 7010. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). During oral argument the plaintiffs concede this point. As a result, the opinions of Susan E. Bradley and James P. Braun will not be considered and the court will issue an order granting its own motion to strike the Compendium of Exhibits to the Second Amended Complaint, September 4, 2019, ECF # 58.

2014 WL 7048395 *11 (9th Cir. BAP December 11, 2014).

**A.    First Count: Depreciation for The Trading Post**

   **1.    Have Aluisis' pled the existence of a debt within the meaning of § 523(a)?**

State law governs whether a "debt" under § 523(a) exists; federal law determines whether that debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 283-84 (1991); *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959 n. 3 (9th Cir. 2015).

Jorgensen's actions give rise to two disputed, unliquidated claims. The first is but a single claim for professional negligence. Under California law all injuries flowing from the violation of one primary right constitute but a single cause of action. *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP*, 195 Cal.App.4th 265, 274-75 (2011) (multiple acts of legal malpractice); *Cyr v. McGovran*, 206 Cal.App.4th 645, 652 (2012) (realtor malpractice); *Richard B. LeVine, Inc. v. Higashi*, 131 Cal.App.4th 566, 575 (2005) (accounting malpractice and fraud). Where the wrongdoing causes successive injuries over time, such single cause of action supports multiple theories of relief. *Big Boy Drilling Corp. v. Rankin*, 213 Cal. 646, 648 (1931); *San Diego Water Co. v. San Diego Flume Co.*, 108 Cal. 549, 556 (1895). As pertinent here, the Aluisis' claim spans the 15 years that Jorgensen understated the allowed amount of depreciation for The Trading Post.

The second is a claim for fraudulent concealment. Concealment may give rise to a state law claim for fraud. *Hahn v. Mirda*, 147 Cal.App.4th 740 (2007) (physician's concealment of revised prognosis); *Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230, 248 (2011). As pled, this claim has a far more limited reach. According to the

12

Aluisis, the first fraudulent concealment occurred on or about October 15, 2015, and would only capture damages flowing from the misstatement. This is a markedly shorter period than the damages arising from the professional negligence. The Aluisis have pled the existence of two state law debts.

### 2. Have the Aluisis pled a debt excepted from discharge under § 523(a)?

Debts arising from fraud will be excepted from discharge; debts arising from negligence will not be excepted from discharge.

As pertinent here, the Aluisis have pled facts from which an inference of Jorgensen's knowledge as of October 15, 2015, may be drawn. Those facts are: Jorgensen's reduction in the long-standing federal income tax basis from $3,695,335 to $2,833,335; understatement of the federal income tax bases from 2014 federal income tax return forward; and Jorgensen's inability to explain the discrepancy between the returns and his false statements as to why he was unable to produce his working papers from which the depreciation allowance was claimed. Second Amended Complaint at ¶¶ 12, 17(G).

### 3. Granting a Rule 12(b)(6) motion as to the professional negligence claim only.

Though the Ninth Circuit has not addressed the issue, most courts believe that a Rule 12(b)(6) motion may not be granted as to only part of a claim. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D. Ariz. 2009) (construing motion under Rule 12(b)(6) as motion under Rule 12(f)); *contra*, *Hill v. Opus Corp.*, 841 F.Supp.2d 1070, 1082 (C.D. Cal. 2011). But even those courts that are not inclined to grant relief under Rule 12(b)(6) agree that the same result may be reached under 12(f)(1)

13

(allowing sua sponte relief). Fed. R. Civ. P. 12(f)(1), *incorporated by* Fed. R. Bankr. 7012(b).

In this case, the Aluisis have pled a cause of action under § 523(a)(2)(A) premised on two different state law claims: negligence and fraud. The negligence claim is dischargeable; the fraud claim may be excepted from discharge. 11 U.S.C. §§ 523(a)(2)(A),(c) (provided a timely adversary proceeding is filed); Fed. R. Bankr. P. 4007(c); *Younie v. Gonya (In re Younie),* 211 B.R. 367, 373-74 (9th Cir. BAP 1997), *aff'd* 163 F.3d 609 (9th Cir.1998) (noting the identity of elements between § 523(a)(2)(A) and California common law fraud). These very different causes of action give rise to very different rights under the bankruptcy code.

The professional negligence claim spans from 2000 to 2015 and seeks damages in the form of lost depreciation expense and ancillary costs, e.g., additional accounting fees. Professional negligence alone will not support a claim of fraud under § 523(a)(2)(A). The motion to dismiss will be granted insofar as the "debt," 11 U.S.C. § 523(a), precedes Jorgensen's first knowing misrepresentation, i.e., October 15, 2015.

In contrast, fraud is nondischargeable and, in this case, gives rise to a narrower species of damages. Since the fraud occurred starting in October 2015, fewer years are involved. Moreover, fraud damages are limited to those "traceable to" or "resulting from" the fraudulent conduct. *Field v. Mans*, 516 U.S. 59, 64 (1995); *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *Ghomesh v. Sabban (In re Sabban)*, 600 F.3d 1219, 1224 (9th Cir. 2010) (monetary award against unlicensed contractor not excepted from discharge where the client suffered no actual harm as result of the misrepresentations of licensure).

14

Here, fraud damages are limited to uncaptured depreciation incurred after the October 15, 2015, misrepresentation, i.e., tax years after 2014, and for tax years preceding 2015 for which amendment was still possible, i.e., 2011-2015, Cal. Rev. & Tax Code § 19306 (specifying a four-year look back period), as well as ancillary damages flowing therefrom. Consequently, the court will grant the motion as to any claim prior to 2011 and will deny the motion as to any claim on or after 2011.

**B. Second Count: § 1031 Exchange of The Trading Post**

After *Iqbal* and *Twombly*, the naked assertion that a defendant "knew" a particular representation was false is insufficient to plead a plausible claim for fraud. *Iqbal*, 556 U.S. at 686-687; *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732-734 (8th Cir. 2015). Rather, the complaint must plead "specific underlying facts from which we can reasonably infer the requisite intent." *In re BP Lubricants USA, Inc.*, 637 F.3d 1307, 1312 (Fed. Cir. 2011).

"Knowledge" requires consciousness of the falsity:

> **A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be,** (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies.

Rest.2d Torts at § 526 (emphasis added); *Field v. Mans*, 516 U.S. 59, 68-70 (1998) (recognizing Restatement (Second) Torts as construing § 523(a)(2)(A)); *see also*, *Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996).

The comments to § 526 of the Second Restatement make this even clearer. "[F]raudulent" refers "solely to the maker's knowledge of the untrue character of his representation." Rest.2d Torts at § 526.

The standard is not an objective one.

> **The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation** under the rule stated in this Section, but it is evidence from which his lack of honest belief may be inferred. . .

*Id.* at Comment on Clause (a) (emphasis added).

The Aluisis have alleged that Jorgensen actually "knew" that "a substantial tax liability would flow" from their intended course of action. Second Amended Complaint ¶¶ 33, 36. Aluisis have not alleged that Jorgensen acted with a "reckless indifference" for the truth, *Morimura, Ari & Co.*, 279 U.S. at 33, nor that Jorgensen "believe[d] that the matter is not as he represents it to be." Rest.2d Torts at § 526(a).

The Aluisis have only alleged two underlying facts from which an inference of knowledge might be drawn as to "how," *Muskingum Watershed Conservancy District*, 842 F.3d at 438, Jorgensen knew that the mortgage boot provisions would be operative: that over his 50-year career he had handled between 20-40 § 1031 Exchanges and that he attended not less than 80 hours of continuing accountancy education every two years.[3]

These facts give rise to two possible interpretations. The first explanation is that Jorgensen missed the mortgage boot issue, giving

---

[3] Some courts believe that asymmetry of information, such as knowledge in fraud, provides a basis to offer a plaintiff greater latitude in pleading plausibility. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016); *Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016). If the Ninth Circuit recognizes the asymmetry of information as a basis to relax the elements of *Iqbal* and *Twombly* it is not applicable here. Prior to filing this adversary proceeding the Aluisis sued Jorgensen in state court and engaged in discovery, including taking Jorgensen's deposition. Second Amended Complaint ¶¶ 31-32. As a result, to the greatest extent possible, any asymmetry has been remedied.

16

rise to a claim for professional negligence. Section 1031 Exchanges are "complex, nuanced, and strict[.]" *San Francisco Club, Inc. v. Baswell-Guthrie*, 897 F.Supp.2d 1122, 1130 (N.D. Ala. 2012); *see also*, 26 C.F.R. §§ 1.1031(a)-1-1.1031(k)-1. Jorgensen only handled one such transaction for his clients every year--or perhaps every two years-- over the course of his 50-year career. These facts fit neatly within a simple negligence model. The second interpretation of the facts is that Jorgensen was actually aware of the mortgage boot issue but decided to conceal it from the Aluisis. The facts fit only roughly into such a model. And while the court should not, and will not, weigh competing inferences, it does find that negligence is an obvious alternative explanation, rendering an inference of fraud not plausible. Consequently, the motion will be granted.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." In determining whether to grant leave to amend the court should consider five factors: bad faith, undue delay, prejudice, futility, and previous amendments. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify" denying leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Here, the Aluisis have plead their case three times. Any further effort would be futile.

### VI. CONCLUSION

As to Count I, the motion to dismiss will be granted as to the Aluisis' fraud claim for each year prior to the 2011 tax year and will otherwise be denied. As to Count II, the motion will be granted. Aluisis' request for leave to file a Third Amended Complaint will be

17

denied. The court will issue an order from chambers.

Dated: Dec 10, 2019

Fredrick E. Clement
United States Bankruptcy Judge

18

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Attorney for Plaintiffs**<br>Joseph R. Beery<br>108 W Center Ave<br>Visalia CA 93291 | **Attorney for the Defendant**<br>Nicholas E. Aniotzbehere<br>2000 Fresno St., Suite 300<br>Fresno CA 93721 |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>2500 Tulare St, Ste 1401<br>Fresno, CA 93721 |
| Kurt F. Vote<br>265 E. River Park Circle, Suite 310<br>Fresno CA 93720 | Michael L. Farley<br>108 W Center Ave<br>Visalia CA 93291 |

19